## STATE v SAUL

Ohio Common Pleas, Miami Co

No 6291.   Decided Nov 8, 1937

Ellis W. Kerr, Pros. Atty., Troy, for State.
Faust, Faust & Faust, Troy, for defendant.

## OPINION

By KLAPP, J.

This is a criminal case in which the defendant stands indicted in words as follows: "That Cecil Saul, late of said county, on the 16th day of January in the year of our Lord one thousand nine hundred and thirty-seven, at the county of Miami aforesaid, then and there being the operator of a motor vehicle owned by J. Urich, a motor vehicle dealer, did operate said motor vehicle in and upon State Highway 25 in said county without displaying two placards bearing the registration number of the dealer." Specifically, this indictment charges a violation of §12622 GC.

Defendant has entered a plea of not guilty, and the matter was by agreement of the State and defendant heard by the court.

The evidence briefly is that on the day stated in the indictment, the defendant was steering an automobile which was described as being a 1929 Oldsmobile coupe in which there was no battery or drive shaft, and in the words of the witness, said automobile was "just a junker." At the time and place alleged in the indictment said automobile was being towed along the highway behind a wrecking truck. It was being taken to the automobile lot of the owner, J. Urich, for the purpose of there being dismantled and the parts utilized, if possible.

The questions presented by the evidence and by the argument of counsel are whether, within the meaning of §12622 GC, this was a 'motor vehicle' and whether or not it was being 'operated.'

There is a dearth of authorities in Ohio upon this question. From other jurisdictions, however, a number of cases have been cited to the court which throw some light upon this subject. There is a line of cases from other jurisdictions which hold that in similar situations as those in the

case at bar, a defendant was operating a motor vehicle while intoxicated, that being the specific charge in each of this line of authorities. One of those authorities particularly is relied upon by the State, it being State v Tacey, 150 Atl. 68, which case is also relied upon by the Attorney General of Ohio in an opinion rendered December 7, 1934, cited in 1934 O.A.G. Vol. 3, page 1703. This was a charge of operating a motor vehicle while intoxicated, and both the case cited and this opinion mentioned, appear to the court to be very carefully considered and excellent opinion. I quote language used in determining that such acts constitute a criminal offense, as follows:

"We entertain no doubt but that in prosecutions of this character our statute was intended to and does cover such acts as the respondent is shown to have committed. The primary object of the particular provision on which this prosecution is based is the protection of the public from injury to person or property by drunken operators on our streets and highways, and if it can be fairly done the statute must be so construed as to accomplish the purpose for which it was intended."

A similar reasoning appears to be followed by the other courts in the light of authorities which have been mentioned.

On the other hand, one case is cited to the court, being Wolcott v Renault Selling Branch, Inc., 162 N. Y. Supp. 396, which is a civil case and in which opinion the learned court reached a difference concerning whether or not a person steering an automobile or truck which is being towed by another truck was, in fact, operating the same, and reached an entirely opposite conclusion. I quote the following words:

"It forbids unlicensed chauffeurs to 'operate or drive' motor vehicles. The words quoted imply that what is intended to be prohibited is the management or operation by an unlicensed chauffeur of a car propelled by its own motive power, which includes not alone the steering of the car but the operation of its machinery, which is the part of a chauffeur's duty which calls for special knowledge and experience. Here the steersman of the second car neither drove nor operated the car."

It becomes apparent, therefore, that there are two lines of authority. On one hand there is authority which holds that drunken persons may operate automobiles or motor vehicles within the meaning of the criminal code prohibiting such action when they do any of the acts which might broadly be included in the term 'operate,' while on the other hand the New York case just cited is authority for the proposition that where an infringement of this particular criminal statute is not involved, the phrase 'operating a motor vehicle' is to be strictly construed and an accused is not to be found guilty nor a defendant called upon to respond in damages in civil actions unless there has been an operation of the motor vehicle in its broad sense, including all of the various acts which may be said to be all taken together as necessary in order to constitute operation.

In the opinion of the Attorney General, it was noted that criminal statutes are to be strictly construed, but the position was taken in that opinion, as well as in the line of authorities mentioned, that in order to accomplish the purpose clearly intended by the legislature, and in order that the public might be safe in its person and property from drunken drivers, that a broad interpretation should be given to the word 'operate' in order to accomplish the result intended. This court does not take any exception to this line of authority nor to the able opinion just discussed, but applying the same recognized rules to the case at bar, it appears that a different result must be reached.

This court must strictly construe this statute in favor of the defendant unless there is a clear reason for doing otherwise. What, then, was the legislative intent and what is the purpose of §12622 GC? It is perfectly clear that the purpose of this section and its relating sections is to cause the operators of motor vehicles regularly upon the highway to pay a license fee, in its nature a tax, for the purpose of building and maintaining a better system of highways. There are, of course, other incidental purposes, such as the identification of the automobile, detection of thefts, etc. But in a broad sense this is the enforcing section of a taxing law. In the light of this conclusion, what is the result to be where a motor vehicle, or what was once, at least, a motor vehicle, is being towed along the highway for the purpose of putting it in a wrecking yard, which motor vehicle is in fact not a complete motor vehicle and could not be propelled under its own power? It appears that it may reasonably be understood that in such a case and for this one particular trip, with such a destination in

view, the legislature did not intend that a license plate bearing a distinctive number would have to be displayed. And it seems to the court to be a reasonable conclusion that strictly upon the facts of the case at bar, and considering this legislative intent, and strictly construing the wording of the statute, this vehicle had ceased to be a motor vehicle in its strictest sense, and that the defendant here was not actually 'operating a motor vehicle.'

At this point the court desires to call attention to what the learned court said in the case of State v Tacey, 150 Atl. 68, which is the case largely relied upon by the Attorney General in his opinion. At page 70 the court said this:

"Whether the words 'operate,' etc., should be given a like meaning when used in connection with other infractions of our motor vehicle laws, we are not called upon to decide."

It appears to this court that the learned judge in this case intended specifically to leave the way open for his own court to place a different interpretation upon the meaning of the word 'operate' as used in their motor vehicle laws, if in the future it should appear that such a different interpretation was necessary, and to restrict the interpretation in this particular case to that statute alone which provided a penalty for operating a motor vehicle while intoxicated.

The court recognizes that there has been considerable controversy over similar cases and that there has grown up out of the tremendous automobile business of this country numerous such auto wrecking places as is operated by the owner of the car in question here, and that there is an apparent need for clarification of the law in regard to this particular type of business.

In view of the court's opinion, therefore, it is the judgment of the court that the defendant herein is not guilty as charged in the indictment in this case, and he does therefore stand discharged.